# EXHIBIT 1

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

The City of Columbia d/b/a Columbia Water

Plaintiff.

vs.

3M Company, Inc.; Daikin America, Inc.;
Daikin Applied Americas, Inc.; EIDP, Inc.
f/k/a E.I. du Pont de Nemours and Company;
DuPont De Nemours, Inc.; Cri-Tech, Inc.;
MDA Manufacturing, Inc; The Chemours
Company; Ascend Performance Materials,
Inc.; Ascend Performance Materials
Operations, LLC; BASF Corporation;
Burlington Industries, Inc.; Cintas
Corporation No. 2 d/b/a Cintas Cleanroom
Corporation; Cone Mills Receiver, LLC;
Comp X, LLC; CompX International, Inc.;
CompX Marine, Inc.; CompX Security
Products, Inc.; CPJ Technologies, Inc.; Jan-
Chem, Ltd.; Ulterion International, LLC;
Ulterion International Exports, II, Inc.;
Masha, LLC; DayStrong Rubber Products,
LLC; Dodge Industrial, Inc. f/k/a Dodge
Mechanical Power Transmission Company,
Inc.; Elevate Textiles, Inc. f/k/a Safety
Components International, Inc. f/k/a
International Textile Group, Inc.; Fibertex
Nonwovens, Inc.; FUJIFILM Holdings
America Corporation; FUJIFILM
Manufacturing U.S.A., Inc; GE Gas Turbines
(Greenville), L.L.C.; Greif Packaging, LLC;
Holly Oak Chemical, Inc.; Milliken &
Company; Mitsubishi Chemical America,
Inc.; Nicca USA, Inc.;  Oppermann
Webbing, Inc.;  QualaWash Holdings, LLC;
Roll Technology Corporation f/k/a Carolina
Plating Company, Inc.; Royal Adhesives &
Sealants, LLC; Saati Advanced Chemicals,
LLC; Saati Americas Corporation; Safety
Components Fabric Technologies, Inc.;
Shaw Industries Group, Inc.; Solvay

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT

C/A#: 2024-CP-40-03392

**AMENDED SUMMONS**

(Jury Trial Demanded)

Specialty Polymers USA, LLC; Saint-
Gobain Abrasives, Inc.; T & S Brass and
Bronze Works, Inc.; Teijin Carbon America,
Inc.; Tietex International, LTD; Toray
Composite Materials America, Inc.; Toray
Industries (America), Inc.; Unichem
Specialty Chemicals, LLC; Unifirst
Corporation; and VLS Piedmont, LLC;

Defendants.

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED AND REQUIRED to answer the Complaint in this
action, a copy of which is herewith served upon you, and to serve a copy of your Answer thereto
on the subscriber at the address listed below, within fifteen (15) days after the service hereof,
exclusive of the day of such service; and if you fail to answer the Complaint within the time
aforesaid, judgment by default will be rendered against you for the relief demanded in the
Complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of
this Court within a reasonable period of time after service.

_s/Amy L.B. Hill_
Amy L.B. Hill, SC Bar No.: 68541
William C. Lewis, SC Bar No.: 101287
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
T: 803-281-8150
F: 803-632-8263
amy@richardsonthomas.com
will@richardsonthomas.com

and

Jeffrey E. Friedman
_(pro hac vice admission pending)_
Jeffrey E. (Jay) Friedman, Jr.
_(pro hac vice admission pending)_
Friedman, Dazzio & Zulanas, P.C.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

2

3800 Corporate Woods Drive
Birmingham, AL 35242
T: 205-278-7057
F: 205-278-7001
jfriedman@friedman-lawyers.com
jayfriedman@friedman-lawyers.com

***Attorneys for Plaintiff***

June 4, 2024

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

The City of Columbia d/b/a Columbia Water

Plaintiff.

vs.

3M Company, Inc.; Daikin America, Inc.;
Daikin Applied Americas, Inc.; EIDP, Inc.
f/k/a E.I. du Pont de Nemours and Company;
DuPont De Nemours, Inc.; Cri-Tech, Inc.;
MDA Manufacturing, Inc; The Chemours
Company; Ascend Performance Materials,
Inc.; Ascend Performance Materials
Operations, LLC; BASF Corporation;
Burlington Industries, Inc.; Cintas
Corporation No. 2 d/b/a Cintas Cleanroom
Corporation; Cone Mills Receiver, LLC;
Comp X, LLC; CompX International, Inc.;
CompX Marine, Inc.; CompX Security
Products, Inc.; CPJ Technologies, Inc.; Jan-
Chem, Ltd.; Ulterion International, LLC;
Ulterion International Exports, II, Inc.;
Masha, LLC; DayStrong Rubber Products,
LLC; Dodge Industrial, Inc. f/k/a Dodge
Mechanical Power Transmission Company,
Inc.; Elevate Textiles, Inc. f/k/a Safety
Components International, Inc. f/k/a
International Textile Group, Inc.; Fibertex
Nonwovens, Inc.; FUJIFILM Holdings
America Corporation; FUJIFILM
Manufacturing U.S.A., Inc; GE Gas Turbines
(Greenville), L.L.C.; Greif Packaging, LLC;
Holly Oak Chemical, Inc.; Milliken &
Company; Mitsubishi Chemical America,
Inc.; Nicca USA, Inc.;  Oppermann
Webbing, Inc.;  QualaWash Holdings, LLC;
Roll Technology Corporation f/k/a Carolina
Plating Company, Inc.; Royal Adhesives &
Sealants, LLC; Saati Advanced Chemicals,
LLC; Saati Americas Corporation; Safety
Components Fabric Technologies, Inc.;
Shaw Industries Group, Inc.; Solvay

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT

C/A#: 2024-CP-40-03392

**AMENDED COMPLAINT**

(Jury Trial Demanded)

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

Specialty Polymers USA, LLC; Saint-
Gobain Abrasives, Inc.; T & S Brass and
Bronze Works, Inc.; Teijin Carbon America,
Inc.; Tietex International, LTD; Toray
Composite Materials America, Inc.; Toray
Industries (America), Inc.; Unichem
Specialty Chemicals, LLC; Unifirst
Corporation; and VLS Piedmont, LLC;

Defendants.

Plaintiff City of Columbia d/b/a Columbia Water ("Columbia" or "Plaintiff"), by and through the undersigned counsel, brings this action against the following Defendants: 3M Company, Inc.; Daikin America, Inc.; Daikin Applied Americas, Inc.; EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company; DuPont De Nemours, Inc.; Cri-Tech, Inc.; MDA Manufacturing, Inc; The Chemours Company; Ascend Performance Materials, Inc.; Ascend Performance Materials Operations, LLC; BASF Corporation; Burlington Industries, Inc.; Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation; Cone Mills Receiver, LLC; Comp X, LLC; CompX International, Inc.; CompX Marine, Inc.; CompX Security Products, Inc.; CPJ Technologies, Inc.; Jan-Chem, Ltd.; Ulterion International, LLC; Ulterion International Exports II, Inc.; Masha, LLC  DayStrong Rubber Products, LLC; Dodge Indistrial, Inc. f/k/a Dodge Mechanical Power Transmission Company, Inc.; Elevate Textiles, Inc. f/k/a Safety Components International, Inc. f/k/a International Textile Group, Inc.; Fibertex Nonwovens, Inc.; FUJIFILM Holdings America Corporation; FUJIFILM Manufacturing U.S.A., Inc; GE Gas Turbines (Greenville), L.L.C.; Greif Packaging, LLC; Holly Oak Chemical,  Inc.; Milliken and Company; Mitsubishi Chemical America, Inc.; Nicca USA, Inc.;  Oppermann Webbing, Inc.;  QualaWash Holdings, LLC; Roll Technology Corporation f/k/a Carolina Plating Company, Inc.; Royal Adhesives & Sealants, LLC; Saati Advanced Chemicals, LLC; Saati Americas Corporation; Safety Components Fabric Technologies, Inc.; Shaw Industries Group, Inc.; Solvay Specialty Polymers USA, LLC; Saint

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

Gobain Abrasives, Inc.; T & S Brass and Bronze Works, Inc.; Teijin Carbon America, Inc.; Tietex International, LTD; Toray Composite Materials America, Inc.; Toray Industries (America), Inc.; Unichem Specialty Chemicals, LLC; Unifirst Corporation; and VLS Piedmont, LLC (collectively "Defendants") seeking damages related to the release of chemicals that have invaded, contaminated, and trespassed into Columbia's drinking water supply and wastewater, and have caused and will cause Columbia to incur extensive additional capital and operating expenses in order remove such chemicals from the drinking water and wastewater effluent.  Columbia sets forth in detail the parties, facts, legal claims, and damages with particularity, as follows:

## BACKGROUND

1.     Many of South Carolina's textile manufacturers used a family of chemicals, referred to as "PFAS"[1] or "forever chemicals," to impart stain resistant and non-stick properties to textiles. PFAS is also commonly used in metal finishing, paper finishing, plastics coating, and aerospace industries, among others for the ability to repel water, dirt, and oil, among other things.

2.     The Broad River and the Saluda River, which is dammed to form Lake Murray, both contain PFAS in concentrations in excess of what the Environmental Protection Agency ("EPA") now considers safe. Columbia relies on the water from the Broad River and Lake Murray to provide up to 150 million gallons of drinking water per day to over 370,000 customers.

---

[1] Unless otherwise delineated, the term "PFAS" or "PFAS Chemicals" in this Complaint refers to any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to), collectively, related chemicals that degrade to PFAS/PFOA/PFOS, and any precursors to PFAS/PFOA/PFOS, including, but not limited to, PFOA, PFOS, Gen-X, HFPO-DA, NEtFOSAA, NMeFOSAA, PFBS, PFDA, PFDoA, PFHpA, PFHxS, PFNA, PFTrDA, PFTA, PFUnA, 11Cl0PF3OUdS, 9Cl-PF3ONS, ADONA, PFPeS, PFHpS, 4:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 6:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 8:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), PFBA, PFPeA, PFMBA, PFMPA, PFEESA, and NFDHA.  It is Columbia's intention that this definition is as broad, expansive, and inclusive as possible.

3

3.    PFAS do not break down in the environment, and, according to one of 3M's lead scientists, persists longer in nature than most rocks. The environmental sink of PFAS is not sediment or vegetation, but rather, biota— human and animal tissue, known to be bio-persistent, bio-accumulative, and toxic.  According to the Environmental Protection Agency ("EPA"), PFAS are an endocrine disruptor which can cause an array of adverse health effects, including various cancers and birth defects, among other things.

4.    Defendants, at all times relevant to this Complaint, have manufactured, sold, used, and/or released PFAS upstream of Columbia's drinking water intake points, or are responsible for wastewater containing PFAS in Columbia's wastewater treatment plant.

5.    Defendants' PFAS enters the environment via several different pathways: direct discharge from an industrial point source; pass through contamination from wastewater containing PFAS introduced into conventional wastewater treatment plants; and groundwater contamination from manufacturing facilities.  PFAS are self-propelled and highly mobile once released into the environment.  The fate and transport of PFAS in the environment is illustrated below by the EPA[2]:



---

[2] https://www.epa.gov/system/files/documents/2022-10/pfas-water-cycle-508-friendly_0.pdf

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

6.     The unique properties of PFAS make them resistant to conventional water and wastewater treatment.  The Defendants knew or should have known for decades that PFAS resist conventional water and wastewater treatment technologies.  PFAS may only be removed from water and wastewater using sophisticated treatment technologies such as reverse osmosis ("RO") or granulated activated carbon ("GAC").  Nonetheless, Defendants continued to manufacture, use, discharge, inadequately warn, and improperly dispose of PFAS through conventional wastewater treatment plants upstream of where Columbia draws its drinking water thus impacting both Columbia's drinking water and its wastewater.

7.     Recently, the EPA announced heightened regulations for PFAS. The new maximum contaminant level ("MCL") mandates that the two primary types of PFAS, PFOA and PFOS, shall not exceed four parts per trillion ("ppt"). The EPA has also implemented a 10 ppt standard for commonly used short chain PFAS compounds PFHxS, PFNA, and HFPO-DA. Additionally, the MCL contains a "Hazard Index" which regulates other commonly used PFAS chemicals as a group according to the combined toxicity.

8.     Columbia must bring its water into compliance with the new drinking water regulations and work to eliminate PFAS from its wastewater effluent.

9.     As it stands, Columbia currently utilizes legacy water and wastewater treatment technology.  Through no fault of its own, Columbia must upgrade its water and wastewater treatment facilities to adequately address Defendants' PFAS.

10.     Furthermore, Columbia will be forced to incur substantially increased capital and operating expenses related to PFAS removal from drinking water and wastewater.  Columbia seeks compensation from Defendants for these PFAS-related expenses.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

## PARTIES

**I. Plaintiff City of Columbia d/b/a Columbia Water**

11.     Plaintiff Columbia, located in Richland County, South Carolina, is a municipal corporation organized under the laws of the State of South Carolina, which operates various departments to enhance the health, safety, and general well-being of its citizens.

12.     Columbia Water is a department of the City of Columbia that, among other responsibilities, provides drinking water to its customers, who are residents of the City of Columbia and the greater Midlands community.  Columbia, doing business as Columbia Water, owns and operates two drinking water treatment plants and one wastewater treatment plant.

13.      The Canal Water Treatment Plant is located at 300 Laurel Street, Columbia, SC 29201, Richland County, South Carolina, and draws water from the Columbia Canal via an intake on the Broad River adjacent to the Columbia Canal and Riverfront Park in downtown Columbia. The Canal Water Treatment Plant has a rated capacity to produce 84 million gallons of drinking water per day.

14.     The Lake Murray Water Treatment Plant is located at 102 Rocky Point Road, Columbia, SC 29212 in Richland County, South Carolina on the banks of Lake Murray, which draws water from an intake from Lake Murray. The Lake Murray Water Treatment Plant has a rated capacity to produce 75 million gallons of drinking water per day.

15.     Columbia owns the property underlying both the Canal Water Treatment Plant and Lake Murray Water Treatment Plant, and it enjoys riparian rights to the water from the Broad River and Lake Murray, which it treats and provides to customers.  At all times relevant hereto, Columbia has suffered substantial damage to its property and property interests.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

16.     Columbia also owns and operates the Metropolitan Wastewater Treatment Plant, located at 1200 Simon Tree Lane, Columbia, SC 29201 in Richland County, South Carolina, which receives wastewater from residential users and industrial users.   The Metropolitan Wastewater Treatment Plant has a 60 million gallon a day permitted capacity.

17.     Because PFAS are resistant to conventional treatment technology, Columbia's water treatment facilities must be upgraded to remove Defendants' PFAS to levels deemed safe by the Federal Government. Likewise, Columbia's wastewater treatment facility must be significantly upgraded to remove Defendants' PFAS from the wastewater effluent before release into the Congaree River.

18.     Columbia has been and continues to be damaged due to the negligent, willful, and wanton conduct of the Defendants, as well the continuous nuisance and trespass caused by Defendants' past and present manufacture, use, purchase, sale, supply, discharge, and release of PFAS into its water and wastewater.

19.     As a direct and proximate result of Defendants' conduct, Columbia has suffered, and will continue to suffer, substantial economic and consequential damage, including but not limited to: past and future expenses associated with the testing and monitoring of PFAS contamination levels in Columbia's raw water, drinking water, and wastewater; past and future expenses associated with testing, monitoring, and installing temporary filtration and pumping systems; pilot program costs associated with permanent filtration systems capable of removing Defendants' PFAS from Columbia's drinking water and wastewater; past and future costs associated with the purchase, installation, and operation of permanent filtration systems capable of removing Defendants' PFAS from Columbia's drinking water and wastewater; costs associated with remediating Columbia's existing treatment and pumping facilities; and damage to goodwill

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

and reputation. In addition, Columbia seeks past, present, and future engineering, operating, and maintenance costs.

20.     Columbia seeks compensatory and punitive damages to the fullest extent allowed by South Carolina law. This includes but is not limited to compensatory damages to upgrade Columbia's water and wastewater treatment technology to be able to remove all PFAS from drinking water and wastewater, filtration equipment, piping, and other necessary infrastructure. Columbia also seeks damages for increased operational expenses associated with the operation of these facilities, such as increased electrical expenses, staffing expenses, and proper disposal of any associated byproducts related to PFAS treatment.

## II.  Defendants

### A.  PFAS Manufacturers[3]

21.     3M Company, Inc. ("3M") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  3M has multiple locations in South Carolina.  At all times relevant hereto, 3M has and continues to manufacture, sell, use and transport PFAS or products which degrade into PFAS and is causing a nuisance, trespass, and injury to Columbia in Richland County, South Carolina.

22.     Daikin Applied Americas, Inc., Cri-Tech, Inc., MDA Manufacturing, Inc., Daikin America, Inc. (collectively "Daikin") are related foreign corporations organized under the laws of Delaware and upon information and belief, all wholly owned subsidiaries of Daikin Industries, Ltd..  Daikin Applied America, Inc. is authorized to do business in the State of South Carolina.  At all times relevant hereto, Daiken has and continues to manufacture, sell, use and transport PFAS

---

[3]  The Defendants described in this Section are all collectively referred to as "PFAS Manufacturers."

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

or products which degrade into PFAS and is causing a nuisance, trespass, and injury to Columbia in Richland County, South Carolina.

23.     EIDP, Inc. f/k/a E.I. du Pont de Nemours and Company ("DuPont") is a foreign corporation organized under the laws of the State of Delaware and is authorized to transact business in the State of South Carolina. At all times relevant hereto, DuPont has and continues to manufacture, sell, use and transport PFAS or products which degrade into PFAS and is causing a nuisance, trespass, and injury to Columbia in Richland County, South Carolina.

24.     DuPont De Nemours, Inc. ("DuPont") is a foreign corporation organized under the laws of the State of Delaware and is authorized to transact business in the State of South Carolina. At all times relevant hereto, DuPont has and continues to manufacture, sell, use and transport PFAS or products which degrade into PFAS and is causing a nuisance, trespass, and injury to Columbia in Richland County, South Carolina.

25.     The Chemours Company ("Chemours") is a foreign corporation organized under the laws of the State of Delaware and is authorized to transact business in the State of South Carolina.  At all times relevant hereto, Chemours has and continues to manufacture, sell, use and transport PFAS or products which degrade into PFAS and is causing a nuisance, trespass, and injury to Columbia in Richland County, South Carolina.

**B.  PFAS Users[4]**

26.     Ascend Performance Materials, Inc. ("Ascend Performance") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Ascend Performance Materials Inc. is the parent company of Ascend Performance Materials Operations, LLC, which owns and operates a manufacturing plant in

---

[4] The list of defendants in this section are all collectively referred to as "PFAS Users."

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

Greenwood, South Carolina, on the banks of Lake Greenwood.  Ascend Performance Materials, Inc. and Ascend Performance Materials Operations, LLC are collectively referred to as the "Ascend Defendants." Ascend has at all relevant times discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that BASF's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

27.    Ascend Performance Materials Operations, LLC, ("Ascend Operations") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Ascend Operations owns and operates a manufacturing plant located on 1515 Hwy 246 S, Ninety Six, Greenwood, South Carolina, on the banks of Lake Greenwood. At all times relevant hereto, Ascend discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that BASF's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

28.    BASF Corporation ("BASF") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  BASF operates multiple locations in South Carolina.  At all times relevant hereto, BASF discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that BASF's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

29.    Burlington Industries, Inc. ("Burlington") was organized under the laws of Delaware and was previously authorized to do business in the State of South Carolina.  Burlington owned and operated many textile mills throughout the Upstate and the Midlands upstream of Columbia's drinking water intakes on the Broad River and Lake Murray.  During its operation, Burlington discharged wastewater containing PFAS upstream of where Columbia draws water in

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

Richland County, South Carolina.  Due to the persistent nature of PFAS chemicals, wastewater discharged by Burlington during its operations continues to cause a nuisance, trespass, invade and injure Columbia's drinking water and wastewater.  Burlington is currently in bankruptcy, but attorney Peter McCoy has been appointed as receiver for Burlington in a matter pending in Richland County, South Carolina.

30.     Cintas Corporation No. 2 d/b/a Cintas Cleanroom Corporation ("Cintas") is a foreign corporation organized under the laws of the State of Nevada and is authorized to do business in the State of South Carolina.  Cintas has locations throughout South Carolina. At all times relevant hereto, Cintas discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Cintas' PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

31.     Cone Mills Receiver, LLC ("Cone Mills") is the receivership entity established for the Cone Mills Corporation (collectively "Cone Mills"), which owned and operated the Carlisle Finishing Plant.  Cone Mills is an entity formed under the laws of South Carolina with the Receiver appointed in South Carolina.  Cone Mills and its predecessor Carlisle Finishing Plaint discharged discharge PFAS into the Broad River upstream of Columbia's drinking water intake.  Due to the persistent nature of PFAS chemicals, discharges by Cone Mills and its predecessor entities, during its operations continue to cause a nuisance, trespass, invade and injure Columbia's drinking water and wastewater in Richland County, South Carolina.

32.     Comp X, LLC ("Comp X") is a domestic limited liability company organized under the laws of South Carolina and is authorized to transact business in the State of South Carolina. At all times relevant hereto, Comp X has discharged and continues to discharge wastewater

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

containing PFAS upstream of where Columbia draws water such that Comp X's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

33. CompX International, Inc. ("CompX International") is an entity formed pursuant to the laws of the State of Delaware and is authorized to transact business in the State of South Carolina. CompX International operates a facility in South Carolina and sells its products throughout South Carolina. At all times relevant hereto, CompX International discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that CompX International's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

34. CompX Marine, Inc. ("CompX Marine") is an entity formed pursuant to the laws of the State of Delaware and is authorized to transact business in the State of South Carolina. CompX Marine operates a facility in South Carolina and sells its products throughout South Carolina. At all times relevant hereto, CompX Marine discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that CompX Marine's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

35. CompX Security Products, Inc. ("CompX Security") is an entity formed pursuant to the laws of the State of Delaware and is authorized to transact business in the State of South Carolina. CompX Security operates a facility in South Carolina and sells its products throughout South Carolina. At all times relevant hereto, CompX Security discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that CompX Security's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

36.     CPJ Technologies, Inc., Jan-Chem, Ltd., Ulterion International, LLC, Ulterion International Exports II, Inc., and Masha, LLC (collectively "CPJ Defendants") are all domestic entities organized under the laws of South Carolina and authorized to do business in the State of South Carolina.  The CPJ Defendants all appear to be chemical manufacturers operating from the same location – 200 Tanner Drive Taylors, South Carolina.  At all times relevant hereto, CPJ Defendants discharged and continue to discharge wastewater containing PFAS upstream of where Columbia draws water such that CPJ Defendants' PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

37.     DayStrong Rubber Products, LLC ("DayStrong") is a domestic limited liability company organized under the laws of South Carolina and is authorized to do business in the State of South Carolina.  DayStrong operates a plant or manufacturing location in South Carolina.  At all times relevant hereto, DayStrong discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that DayStrong's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

38.     Dodge Industrial, Inc. f/k/a Dodge Mechanical Power Transmission Company, Inc. ("Dodge") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Dodge's global headquarters are located in South Carolina.  At all times relevant hereto, Dodge discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Dodge's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

39.     Elevate Textiles, Inc. f/k/a Safety Components International, Inc. f/k/a International Textile Group, Inc. ("Elevate") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Elevate is the current owner and

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

operator of the former Burlington and Cone Mills companies, which at all times relevant hereto discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Elevate's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina. Further, given the persistent nature of PFAS, Elevate and its predecessors Burlington and Cone Mills released PFAS chemicals in the past that continue to invade, trespass, injure and cause a nuisance in Richland County, South Carolina.

40.     Fibertex Nonwovens, Inc. ("Fibertex") is a domestic corporation organized under the laws of South Carolina and is authorized to do business in the State of South Carolina. Fibertex's principal place of business is located in South Carolina.  At all times relevant hereto, Fibertex discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Fibertex's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

41.     FUJIFILM Holdings Americas Corporation ("Fujifilm Americas") is a foreign corporation organized under the laws of Delaware and is authorized to do business in the State of South Carolina.  Fujifilm Americas is the parent company of Defendant FUJIFILM Manufacturing U.S.A., Inc, ("Fujifilm Manufacturing" and with Fujifilm Americas collectively "Fujifilm Defendants") which owns and operates a manufacturing facility located at 211 Puckett Ferry Rd, Greenwood, SC 29649 on the banks of Lake Greenwood.  At all times relevant hereto, Fujifilm Defendants discharged and continue to discharge wastewater containing PFAS upstream of where Columbia draws water such that Fujifilm Defendants' PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

42.     GE Gas Turbines (Greenville), L.L.C. ("GE Gas") is a foreign limited liability company organized under the laws of Delaware and registered to do business in the State of South

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

Carolina. At all times relevant hereto, GE Gas discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that GE Gas' PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

43.    Greif Packaging, LLC ("Greif") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Greif has multiple locations in South Carolina.  At all times relevant hereto, Greif discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Greif's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

44.    Holly Oak Chemical, Inc. ("Holly Oak") is a domestic corporation organized under the laws of South Carolina and is authorized to do business in the State of South Carolina. At all times relevant hereto, Holly Oak discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Holly Oak's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

45.    Milliken & Company ("Milliken") is a global company incorporated in Delaware but formed in South Carolina with its headquarters and principal place of business located in Spartanburg, South Carolina.  Defendant has been registered to do business in South Carolina since 1949. Milliken has owned and continues to own and operate many facilities which have discharged PFAS waste upstream of Columbia's drinking water intakes.  At all times relevant hereto, Milliken discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Milliken's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

46.     Mitsubishi Chemical America, Inc. ("Mitsubishi") is a is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. Mitsubishi has multiple operations in South Carolina including but not limited to the Mitsubishi Polyester Film, Inc.[5] plant.  At all times relevant hereto, Mitsubishi has caused and continues to cause nuisance, trespass, and injury in Richland County, South Carolina by discharging wastewater containing PFAS upstream of where Columbia draws water in Richland County, South Carolina.

47.     Nicca USA, Inc. ("Nicca") is a foreign corporation organized under the laws of North Carolina and is authorized to transact business in the State of South Carolina. Nicca operates a plant in South Carolina.  At all times relevant hereto, Nicca discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Nicca's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

48.     Oppermann Webbing, Inc. ("Oppermann") is a domestic corporation organized under the laws of South Carolina and is authorized to transact business in the State of South Carolina. At all times relevant hereto, Oppermann discharged and continue to discharge wastewater containing PFAS upstream of where Columbia draws water such that Oppermann's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

49.     QualaWash Holdings, LLC ("QualaWash") is a foreign limited liability company organized under the laws of Florida and is authorized to transact business in the State of South

---

[5] Mitsubishi Polyester Film, Inc. is an entity formed under the laws of Delaware and was at one time registered to do business in South Carolina.  However, Mitsubishi Polyester Film, Inc. is currently listed with the South Carolian secretary of state as "merged out of existence" or "dissolved" as of 2018.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

Carolina. QualaWash has multiple locations in South Carolina.  At all times relevant hereto, QualaWash discharged and continue to discharge wastewater containing PFAS upstream of where Columbia draws water such that QualaWash's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

50.    Roll Technology Corporation f/k/a Carolina Plating Company, Inc. ("Roll Tech") is a domestic corporation organized under the laws of the State of South Carolina and is authorized to transact business in the State of South Carolina. At all times relevant hereto, Roll Tech discharged and continue to discharge wastewater containing PFAS upstream of where Columbia draws water such that Roll Tech's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

51.    Royal Adhesives & Sealants, LLC ("Royal") is a foreign limited liability company organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. Royal maintains a location in South Carolina.  At all times relevant hereto, Royal discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Royal's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

52.    Saati Advanced Chemicals, LLC ("Saati Advanced") is a domestic limited liability company organized under the laws of South Carolina and is authorized to transact business in the State of South Carolina.  At all times relevant hereto, Saati Advanced discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Saati Advanced's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

53.     Saati Americas Corporation ("Saati Americas") foreign corporation organized under the laws of New York and is authorized to transact business in the State of South Carolina. At all times relevant hereto, Saati America discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Saati America's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina. Saati Advanced and Saati Americas are collectively referred to as the "Saati Defendants."

54.     Safety Components Fabric Technologies, Inc. ("Safety Components") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. Safety Components operates a manufacturing location in South Carolina. At all times relevant hereto, Safety Components discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Safety Components' PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

55.     Shaw Industries Group, Inc.  ("Shaw") is a foreign corporation organized under the laws of Georgia and is authorized to transact business in the State of South Carolina. Shaw operates a manufacturing location in South Carolina. At all times relevant hereto, Shaw discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Shaw's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

56.     Solvay Specialty Polymers USA, LLC ("Solvay") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Solvay operates multiple locations in South Carolina.  At all times relevant hereto, Solvay discharged and continues to discharge wastewater containing PFAS upstream of where

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

Columbia draws water such that Solvay's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

57.     Saint-Gobain Abrasives, Inc. ("St. Gobain") is a foreign corporation organized under the laws of Massachusetts and is authorized to transact business in the State of South Carolina. St. Gobain has at least one location in South Carolina. At all times relevant hereto, St. Gobain discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that St. Gobain's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

58.     T & S Brass and Bronze Works, Inc. ("T&S") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina. T&S has its principal place of business and headquarters in South Carolina.  At all times relevant hereto, T&S discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that T&S's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

59.     Teijin Carbon America, Inc. ("Teijin") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in South Carolina.  Teijin owns and operates a manufacturing facility located at 1122 Highway 246 in Greenwood, South Carolina on the banks of Lake Greenwood.  At all times relevant hereto, Teijin discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Teijin's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

60.     Tietex International, LTD ("Tietex") is a domestic corporation organized under the laws of South Carolina and is authorized to transact business in the State of South Carolina.  At all

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

times relevant hereto, Tietex discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Tietex's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

61.     Toray Composite Materials America, Inc. ("Toray Composite") is a foreign corporation organized under the laws of Washington and is authorized to transact business in the State of South Carolina.  Toray Composite owns and operates a manufacturing plant located at 2202 Moore Duncan Hwy in Moore, SC 29369.   At all times relevant hereto Toray Composite discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Toray Composite's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

62.     Toray Industries (America), Inc. ("Toray Industries") is a foreign corporation organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Toray Industries is the parent company of Toray Composite.  At all times relevant hereto Toray Industries discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Toray Industries' PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.  Toray Composite and Toray Industries are referred to collectively as the "Toray Defendants."

63.     Unichem Specialty Chemicals, LLC ("Unichem") is a foreign limited liability company organized under the laws of Delaware and is authorized to transact business in the State of South Carolina.  Unichem operates a location in South Carolina.  At all times relevant hereto, Unichem discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Unichem's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

64.     Unifirst Corporation ("Unifirst") is a foreign corporation organized under the laws of Massachusetts and is authorized to transact business in the State of South Carolina.  Unifirst operates multiple locations in South Carolina.  At all times relevant hereto, Unifirst discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that Unifirst's PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

65.     VLS Piedmont, LLC ("VLS") is a domestic limited liability company organized under the laws of South Carolina and is authorized to transact business in the State of South Carolina.  At all times relevant hereto, VLS discharged and continues to discharge wastewater containing PFAS upstream of where Columbia draws water such that VLS' PFAS discharge invades, trespasses, injures and causes a nuisance in Richland County, South Carolina.

## DISCLAIMERS

66.     This lawsuit is brought under the laws of The State of South Carolina. Columbia asserts no federal cause of action, invokes no federal statutes, and seeks no relief that is based on any federal statute or laws.

67.     Any federal claim is expressly disclaimed by Columbia.

68.     Columbia makes no claim, and asserts no cause of action, to implicate that the manufacture, sale, or use of PFAS containing firefighting foam (often referred to as "AFFF") in any way caused or contributed to cause the damages, or the claims, asserted in this lawsuit. Columbia expressly disclaims any cause of action or damages arising from or associated with AFFF manufacture, sale, use or disposal by the named Defendant, or by any unnamed defendant or entities, including any legal or factual claim based on alleged "Mil Spec AFFF" as well as any potential claims arguably arising from any federal enclaves.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

69.    Columbia makes no claim, and asserts no cause of action, against any upstream publicly owned wastewater treatment plants.

## NO CLASS ACTION PARTICIPATION

70.    Several Defendants in this case have been sued in other cases involving allegations of PFAS pollution to public water systems. In 2023, 3M and DuPont settled nationwide, multi-district, class-action claims related to the contamination of public water supplies with PFAS for approximately $10 billion and $1 billion, respectively. S*ee In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D.S.C.) ("*AFFF Litigation*").

71.    Prospective class members in the *AFFF Litigation* had the option of "opting out" of the 3M and DuPont settlements in order to pursue individual lawsuits against 3M and DuPont. Columbia validly and timely exercised its right to "opt out" of the *AFFF Litigation* Class Action Settlements with 3M and DuPont in order to pursue its claims in this lawsuit. Columbia has received confirmation from the Notice Administrator overseeing these settlements that the opt-outs were in fact "compliant."

72.    Judge Richard Gergel, the United States District Court Judge for the District of South Carolina overseeing the *AFFF Litigation*, ultimately entered orders of final approval on the 3M and DuPont settlements. At no time has 3M, DuPont, or any other party raised objections to Columbia's decision to opt-out from the class settlements.

## JURISDICTION AND VENUE

73.    This lawsuit is brought under the laws of South Carolina. Columbia asserts no federal causes of action, invokes no federal statutes, and seeks no relief that is based on any federal statute or laws. Any federal claims are expressly disclaimed.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

74.    Complete diversity does not exist between Columbia and all Defendants. This case arises out of the manufacture, supply, use, and disposal of PFAS in the carpet, textile, chemical, metal and plastics finishing, and other related industries utilizing or containing PFAS. Columbia makes no claim that the manufacture or use of AFFF in any way caused or contributed to its damages or the claims asserted in this lawsuit.

75.    Venue is proper in this Court pursuant to S.C. Code Sections 15-7-20(1) and 15-7-30(E)(2), (F)(1)(2) as the most substantial part of the alleged act or omission, the contamination of Columbia's drinking water and wastewater systems by Defendants' chemicals occurred in Richland County, South Carolina on the Broad River and Lake Murray at the drinking water intakes, as well as introduction of PFAS-contaminated wastewater into Columbia's Metro Wastewater Treatment Plant in Richland County, South Carolina.

76.    Jurisdiction is proper in this Court for Defendants who are organized under the laws of South Carolina, doing business in South Carolina, or maintaining their principal place of business in South Carolina pursuant to S.C. Code Ann. § 36-2-802.

77.    Jurisdiction is also proper in this Court for foreign Defendants pursuant to S.C. Code Ann. § 36-2-803 as the allegations that form the basis of the causes of action in this Complaint pertain to acts described in S.C. Code Ann. § 36-2-802(a).

## FACTUAL ALLEGATIONS

**I.    Manufacturing Defendants Have Known, and PFAS Users Knew or Should Have Known for Decades That PFAS are a Threat to Human Health and the Environment.**

78.    PFAS are man-made, synthetic chemicals used to impart oil-, water-, and stain resistance to various products, including carpet, paper, and textiles. The same chemical properties that provide enhanced soil-resistant attributes also make PFAS resistant to degradation and persistent in the environment.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

79.     PFAS are known to the EPA and the Defendants as "forever chemicals" because these man-made chemicals persist in the environment for extremely prolonged periods and do not degrade like other chemicals. PFAS accumulate in the human body through the process of bioaccumulation. In fish and mammals, PFAS accumulate, build, and increase though biomagnification.

80.     PFAS also migrate through surface water and groundwater, allowing PFAS compounds to travel long distances while causing extensive contamination.

81.     Since PFAS do not degrade naturally and are synthetic "forever chemicals," PFAS released into the environment decades ago will remain present and will continue causing pollution that is a threat to public health, unless removed by very specific, sophisticated filtration methods.

82.     Although there are thousands of chemical substances that fall under the PFAS umbrella, the two most notorious PFAS chemicals are perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA").

83.     PFOS and PFOA are considered "long-chain" PFAS (sometimes referred to as "C-8" chemistries), because they contain eight (8) fluorinated carbon atoms. Defendants knew that, because of the strong carbon-fluorine bond, PFOS and PFOA do not degrade naturally in the environment.

84.     According to the EPA, 3M was the sole manufacturer of PFOS in the United States and the principal manufacturer of PFOS worldwide. Upon information and belief, 3M supplied PFOS and or products containing or degrading into PFOS to the PFAS Users for use in their manufacturing processes.

85.     DuPont, Daikin, and 3M all manufactured PFOA and or products containing or degrading into PFOA. Upon information and belief, DuPont, Daikin, and 3M supplied PFOA and

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

or products containing or degrading into PFOA to the PFAS Users for use in their manufacturing processes.

86.    3M and DuPont began studying the toxicity of PFOS and PFOA as early as the 1950s and 1960s.

87.    By the 1970s, 3M and DuPont were aware that their products persisted indefinitely in the environment.

88.    In the 1970s and 1980s, 3M began conducting animal studies to determine the possible carcinogenicity of PFAS chemicals. One such study, an investigation into the effects of PFOS on rhesus monkeys, had to be aborted prior to the conclusion of the study "[b]ecause of unexpected early mortalities in all monkeys at all levels" of PFOS dosage. In 1978, a 3M interoffice correspondence concluded that "[r]ecent animal studies have shown that FC-95 [PFOS] is more toxic than was previously believed."

89.    By the 1980s and 1990s, 3M and DuPont were fully aware that PFOS and PFOA were toxic and persistent in the environment and that conventional treatment methods were ineffective at removing these pollutants. Nevertheless, the two companies actively hid their findings from regulators and the general public. In 1988, a 3M internal memo raised concerns that 3M had "perpetuate[d] the myth that these fluorochemical surfactants are biodegradable."

90.    In 1997, 3M prepared a Material Safety Data Sheet (MSDS) for a product containing PFAS. The MSDS contained the following warning:

> **CANCER:**
>    **WARNING: Contains a chemical which can cause cancer. (3825-26-1)**
>    **(1983 and 1993 studies conducted jointly by 3M and DuPont).**

91.    This warning was removed from subsequent MSDSs.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

92.    In the late 1990s, 3M began a comprehensive, multi-city investigation into the extent of its PFAS pollution.

93.    In 1999, Richard Purdy, one of 3M's lead scientists on the multi-city study, resigned from his position due to his "profound disappointment in 3M's handling of the environmental risks associated with the manufacture and use of perfluorinated sulfonates (PFOS) . . . and its precursors." See Purdy Letter dated March 28, 1999.

94.    Mr. Purdy's letter, which was also sent to a representative of the EPA, further stated that PFOS "is the most insidious pollutant since PCB" and "more stable than many rocks." Id.

95.    Following Mr. Purdy's letter, the EPA began an investigation into PFOS after receiving data that "PFOS was persistent, unexpectedly toxic, and bioaccumulative (PBT)." Federal Register/Vol. 68, 2003.

96.    During its subsequent investigation of 3M, the EPA disclosed that "following negotiations with EPA, 3M . . . announced that it will voluntarily phase out perfluorooctyl sulfonate ("PFOS") chemistry." The EPA determined that PFOS was toxic and accumulated to a high degree in humans and animals. The EPA's preliminary risk assessment found unacceptable margins of exposure for workers and possibly the general population exposed to PFOS.

97.    The EPA concluded that "PFOS represents an unacceptable technology that should be eliminated to protect human health and the environment from potentially severe long-term consequences." Shortly thereafter, the EPA expanded its investigation to perfluorooctanoic acid (PFOA), stating "EPA was concerned in part because 3M had also found PFOA in human blood during the studies on PFOS."

98.    Despite the fact that 3M announced that it was withdrawing PFOS and PFOA from the market, DuPont and Daikin continued to manufacture and or use PFOA with full knowledge

that the substance had been withdrawn by 3M due to environmental and potential health risks to the public.

99.    Upon information and belief, the PFAS Users continued to purchase, use, and discharge PFOA and products containing or degrading into PFOA despite the fact that 3M had withdrawn PFOA due to environmental and potential health risks to the public.

100.    By 2006, the majority of an EPA Science Advisory Board expert committee had recommended that PFOA be considered "likely to be carcinogenic to humans." Similarly, an independent C-8 Science Panel identified kidney cancer and testicular cancer as having a "probable link" to PFOA exposure, based on epidemiological and other data in the Mid-Ohio Valley.

101.    DuPont and Daikin continued to manufacture and supply PFOA and products containing and or degrading into PFOA until at least 2015.

102.    All of the Defendants knew or should have known that PFOS and PFOA are persistent and bioaccumulative. All of the Defendants have known or should have known that conventional wastewater and drinking water treatment systems are incapable of removing PFOS and PFOA from water supplies. Nevertheless, the Defendants in this case supplied, used, purchased, and or accepted PFOS and PFOA, and or products containing or degrading into PFOS and PFOA, without using adequate care to prevent the contamination of Columbia's water supply.

103.    PFOS and PFOA manufactured, used, sold and discharged by the Defendants are still present at elevated levels in the Broad River and Lake Murray, Columbia's drinking water supply, and wastewater. Many of these Defendants are still discharging wastewater, stormwater, and other types of discharges containing PFOS and PFOA upstream of Columbia's drinking water intakes or into Columbia's wastewater treatment plant to this day.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

104.    Defendants have operated in the past, and or are currently operating, manufacturing facilities related to PFAS and products that contain or degrade into PFAS. The PFAS Manufacturers use PFAS as part of their manufacturing processes or otherwise supply PFAS or products that contain or degrade into PFAS to various industries.

105.    PFAS, and products that contain or degrade into PFAS, are manufactured, and sold by the PFAS Manufacturers to the PFAS Users. These products are subsequently discharged both directly and indirectly into the Broad River, the Saluda River, and their tributaries such as the Reedy River, Tyger River, and Enoree River, as well as other tributaries and watersheds that ultimately discharge into Richland County, South Carolina.

106.    In some instances, PFAS Manufacturers also use PFAS chemicals and discharge or have discharged the same upstream of Columbia's drinking water.

107.    Because PFAS continue to invade Columbia's drinking water and wastewater, PFAS Manufacturers and PFAS Users have caused and contributed, and are still causing and contributing to, a continuous nuisance and trespass through their past and present manufacture, use, purchase, sale, supply, discharge, and or release of PFAS and products that contain or degrade into PFAS.

## II.    "Short-Chain" PFAS

108.    After 3M phased out "long-chain" PFAS, it began selling "short-chain" PFAS compounds (sometimes referred to as "C-6" and "C-4" chemistries), and or products that contained or degraded into "short-chain" PFAS, to the PFAS Users.  DuPont and Daikin eventually converted to "short-chain" PFAS as well.

109.    The "short-chain" PFAS compounds sold and or used by the PFAS Manufacturers included and or degraded into PFBS, PFBA, PFHxA, PFPeA, Gen-X, and more.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

110.    Defendants knew or should have known that that these "short-chain" PFAS compounds were just as persistent and bioaccumulative as their "long-chain" predecessors. Defendants also knew or should have known that conventional wastewater and drinking water treatment systems are incapable of removing "short-chain" PFAS from water supplies. Nevertheless, Defendants supplied, used, purchased, and or accepted "short-chain" PFAS, and or products containing or degrading into "short-chain" PFAS, without using adequate care to prevent the contamination of Columbia's water supply.

111.    Upon information and belief, Defendants continue to supply, use, purchase, accept, and or discharge "short-chain" PFAS, and or products containing or degrading into "short-chain" PFAS, without using adequate care to prevent the contamination of Columbia's water supply or wastewater effluent, to this day.

### III.    PFAS Regulations

112.    In 2009, the U.S. Environmental Protection Agency ("EPA") issued a Provisional Health Advisory for drinking water setting advisory levels of 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS in drinking water.

113.    In May of 2016, EPA published a Lifetime Health Advisory for drinking water setting the levels at 70 ppt *combined* for PFOA and PFOS. This Health Advisory was based on EPA review of the best available scientific literature that indicated "studies of the effects of PFOA and PFOS on laboratory animals" and "epidemiological studies to human populations" which "indicate that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g.,

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."

114.    In 2022, EPA updated the 2016 Health Advisory for PFOS and PFOA in drinking water, dramatically lowering the recommended limits to .02 ppt for PFOS and .004 ppt for PFOA. The EPA also set levels for two "short-chain" PFAS: PFBS and Gen-X.

115.    In March 2023, EPA proposed a National Primary Drinking Water Regulation ("NPDWR") to establish legally enforceable Maximum Contaminant Levels ("MCLs") for six PFAS in drinking water: PFOA, PFOS, PFBS, PFNA, PFHxS, and Gen-X).

116.    Under the NPDWR, public water systems, like Columbia, will be required to provide drinking water with no more than 4 ppt PFOS,  4 ppt PFOA, 10ppt PFHxS, 10 ppt PFNA, and 10 ppt Gen-X.

117.    Moreover, the NPDWR will require that public water systems, like Columbia, remove PFBS, PFNA, PFHxS, and Gen-X from their drinking water pursuant to a Hazard Index. Under this Hazard Index, *combined* concentrations of these compounds may additionally constitute a violation even where each individual compound is lower than the MCL.

118.    In announcing the new MCLs, EPA stated that it "expects that over many years the final rule will prevent PFAS exposure in drinking water for approximately100 million people, prevent thousands of deaths, and reduce tens of thousands of serious PFAS attributable illnesses."

119.    Pursuant to the NPDWR, EPA also established "health-based" Maximum Contaminant Level Goals ("MCLGs") for all six (6) of these PFAS at zero ppt.

120.    The EPA explained the decision-making process behind the MCLGs: "Following a systematic review of available human epidemiological and animal toxicity studies, EPA has

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe."

121.    Finally, on April 19, 2024, the EPA formally designated PFOS and PFOA as Hazardous Substances under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA).  According to the EPA, the designation of PFOS and PFOA as Hazardous Substances under CERCLA is designed to ensure that those responsible for the contamination pay to clean it up.

**IV.    PFAS POLLUTION IN AND AROUND THE BROAD RIVER AND LAKE MURRAY.**

122.    Columbia draws its raw water from both the Broad River and Lake Murray, which is a Saluda River impoundment.

123.    The Broad River originates in the Blue Ridge Mountains of North Carolina mountains and combines with the Saluda River in Columbia, South Carolina to form the Congaree River.

124.    The Saluda River, which is formed northwest of the City of Greenville, South Carolina, flows southeastwardly down to the City of Columbia.  The Saluda River was first dammed to form Lake Greenwood, which is also fed by the Reedy River.  The Saluda reforms after Lake Greenwood and continues to the City of Columbia, where it is dammed a second time to form Lake Murray.

125.    Both the Broad River and Lake Murray contain elevated levels of PFAS as a result of Defendants' past and present manufacture and or discharge of PFAS.

126.    Because of their persistence and bioaccumulation, PFAS discharged into the Broad River and Saluda River decades ago are still present in Columbia's water supply and continue to

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

impact Columbia's ability to provide clean drinking water to its water customers as well as Columbia's ability to process its wastewater.

127.    These "forever chemicals" will continue to pollute Columbia's water supply for generations to come and will be present in Columbia's drinking water in excess of the applicable federal standards until they are removed through very sophisticated filtration methods.

128.    Defendants have known or should have known that PFAS cannot be removed by conventional wastewater treatment methods and that the Defendants' PFAS-contaminated wastewater passes directly through upstream wastewater treatment systems and back into the Broad River, Saluda River, and their tributaries upstream of the City of Columbia, South Carolina and Richland County, South Carolina.

129.    In addition to discharging PFAS into the Broad River and Saluda River via industrial wastewater discharges to local wastewater treatment plants, Defendants have also discharged PFAS into the Broad River, Saluda River, Lake Murray, and related tributaries and watershed by way of stormwater and groundwater discharges.

130.    As a result of Defendants' manufacture, use, disposal, and discharge of PFAS and or products and waste that contain or degrade into PFAS, dangerously elevated levels of PFAS have been detected in the Broad River and Saluda River, Lake Murray, and related tributaries and watersheds. The levels of PFAS detected far exceed EPA's most recent Health Advisory and proposed Maximum Contaminant Levels and Maximum Contaminant Level Goals.

131.    South Carolina's Department of Health and Environmental Control ("DHEC") performed extensive sampling as part of its Ambient Surface Water PFAS Study.[6]  Sampling

---

[6] DHEC's ambient surface water data is published on DHEC's website: https://scdhec.gov/environment/polyfluoroalkyl-substances-pfas/pfas-bureau-water (last accessed January 28, 2024)

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

reveals significant PFAS detections downstream of Defendants' facilities and upstream of Columbia's drinking water intakes in concentrations that exceed the current lifetime health advisory and the proposed MCL of 4 ppt for PFOA and PFOS.

132.    The levels of PFAS in Columbia's finished water detected exceed EPA's most recent Health Advisory, the new Maximum Contaminant Levels ("MCL"), and Maximum Contaminant Level Goals ("MCLG").

133.    Because the Canal Water Treatment Plant and Lake Murray Water Treatment Plant utilize legacy treatment technology, like all conventional water treatment plants in the country, they cannot treat Defendants' PFAS. Columbia's raw and finished water both contain levels of "forever chemicals" much higher than that which has been deemed safe by EPA under the 2022 Health Advisory and the new MCLs.

134.    Despite Columbia's City Ordinance (Part 32), which prevents introducing any chemical which may "pass through" or bypass treatment from the system, or chemicals designated as "hazardous," certain Defendants continue to introduce PFAS-laden wastewater into Columbia's Metro Wastewater Treatment Plant.

135.    Now, through no fault of its own, Columbia must find a way to remove these harmful chemicals from its water and wastewater to both meet the recommended standards set by the EPA to protect public health.

136.    PFAS can only be filtered using costly and sophisticated treatment technology.

137.    Columbia seeks compensatory damages for filtration equipment, piping, and adequate permanent facilities necessary to operate the filtering systems sufficient to remove PFAS from water relied on by Columbia for its customers, who in turn rely on Columbia to provide clean, safe drinking water.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

138.    Columbia also seeks compensatory damages to the fullest extent allowed by South Carolina law for the filtration equipment, piping, and adequate permanent facilities necessary to operate state-of-the-art filtering systems sufficient to remove all PFAS from Columbia's wastewater prior to release into the Congaree River.

## FOR A FIRST CAUSE OF ACTION
### NEGLIGENCE

139.    Columbia incorporates all prior paragraphs by reference as if fully set forth and restated herein.

140.    As manufacturers, users, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, disposers, and or handlers of PFAS, products containing and or degrading into PFAS, products manufactured using PFAS, and or waste containing and or degrading into PFAS, Defendants owed a duty to Columbia, in its handling, control, use, and disposal of PFAS so as not to cause harm to Columbia.

141.    Defendants owed a duty to Columbia to exercise reasonable care in their manufacturing procedures and waste-handling and disposal operations to prevent the contamination of PFAS chemicals into Columbia's raw water supply, water treatment plants, wastewater treatment plant, and related property.

142.    As described in detail above, Defendants breached their duty to exercise due care and reasonable care owed to Columbia.

143.    Defendants knew or should have known that their PFAS is persistent in the environment and is bioaccumulative. Defendants also knew or should have known that conventional filtration systems are incapable of removing PFAS from environmental media, and that users including Columbia would be incapable of removing PFAS from their water supply and

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

wastewater effluent. Defendants' breaches of their duties to Columbia constitute negligent, willful, and or reckless conduct.

144.    Columbia has a reasonable expectation that Defendants should refrain from or otherwise avoid contaminating Columbia's source water, wastewater, and the surrounding environment as well as comply with the EPA's standards.

145.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and omissions, Columbia has been damaged and has incurred expenses and will continue to incur expenses in the future in order to remove PFAS from both its drinking water as well as its wastewater treatment. Because Columbia's damages and indivisible, Defendants are jointly and severally liable for Columbia's damages.

146.    Defendants knew or should have known of the likely impact, harm, damage, and injury their conduct would have on Columbia.

147.    Defendants' conduct, practices, and inactions evidence its reckless disregard for Columbia's water, property, and property interests.

148.    Defendants' conduct should subject them to liability for punitive damages because Defendants' actions were grossly negligent, wanton, willful, and careless regarding the contamination of Columbia's water source and wastewater treatment facilities.

149.    Columbia is informed and believes it entitled to judgment against Defendants for compensatory damages as well as punitive damages.

### FOR A SECOND CAUSE OF ACTION
### CONTINUING NUISANCE

150.    Columbia incorporates all prior paragraphs by reference as if fully set forth and restated herein.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

151.    Defendants have created a continuing nuisance by failing to prevent the contamination of Columbia's water supply and wastewater with PFAS. As a direct result, Columbia's drinking water supply, water treatment plants, wastewater treatment plant, and related property are contaminated with PFAS, thereby proximately causing Columbia interference with its use of the property, namely its water source.

152.    Defendants' manufacture and use of PFAS chemicals for decades constitutes a nuisance that is continuous and ongoing as the PFAS chemicals are continually contaminating and invading Columbia's water supply and wastewater treatment plant.

153.    The contamination of Columbia's water supply, water treatment plants, wastewater treatment plant, and related property constitutes an unreasonable interference or continuing nuisance, which has caused Columbia damages that are separate and distinct from those faced by the general public.

154.    Columbia has suffered damages as a direct result of Defendants' continuing nuisance including but not limited to: past and future expenses associated with installing, maintaining, and operating drinking water and wastewater treatment systems and associated facilities and equipment capable of removing PFAS; past and future expenses associated with testing and monitoring raw and finished water for the presence of PFAS; and costs associated with remediating Columbia's existing treatment facilities as necessary to remove PFAS from its water supply and wastewater effluent.

155.    This nuisance has caused substantial damage and will continue to cause damages until Columbia receives compensatory damages for the necessary improvements of filtration technology that will allow for the removal of PFAS from Columbia's water supply and wastewater

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

treatment. Because Columbia's damages are indivisible, Defendants are jointly and severally liable for Columbia's damages.

156.    Defendants have acted with a conscious indifference to the probable dangerous consequences of their actions and the reasonably foreseeable impact such actions would have.

157.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and omissions, Columbia has been damaged and has incurred expenses and will continue to incur expenses in the future to remove PFAS from both its drinking water as well as its wastewater treatment.

158.    Defendants' conduct, practices, and inactions evidence its reckless disregard for Columbia's water, property, and property interests.

159.    Defendants' conduct subjects them to liability for punitive damages because Defendants' actions were grossly negligent, wanton, willful, and careless regarding the contamination of Columbia's water sources and wastewater treatment facility.

160.    Columbia is informed and believes that it is entitled to judgment against Defendants for compensatory damages as well as punitive damages pursuant to Defendants' continuing nuisance.

## FOR A THIRD CAUSE OF ACTION
### PUBLIC NUISANCE

161.    Columbia incorporates all prior paragraphs by reference as if fully set forth and restated herein.

162.    Columbia owns and occupies property used to serve its water customers, including two water intake sites, water distribution systems, water treatment plants, and one wastewater treatment plant, as well as offices, associated facilities, and equipment.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

163.    Columbia owns land and water rights which permit them to draw water from the Broad River and Lake Murray to provide drinking water to its customers.

164.    Defendants have created and contributed to a public nuisance by causing or contributing to cause PFAS chemicals to contaminate the Broad River, the Saluda River, and Lake Murray, all of which are public waterways from which Columbia collects its drinking water supply. Defendants' contamination of these waterways obstructs and impairs the public rights to collect drinking water as well as discharge its treated wastewater.

165.    The continuance and ongoing contamination of the Saluda River, Lake Murray, and the Broad River at Columbia's intake sites, water treatment plants, wastewater treatment plant, and related property constitutes a public nuisance depriving Columbia of its ability to deliver clean and uncontaminated water and wastewater treatment to its customers.

166.    Defendants have also contaminated Columbia's wastewater treatment property and facility with PFAS chemicals through discharge in stormwater runoff and other means.

167.    It was reasonably foreseeable, and in fact known to Defendants, that their actions would contaminate, and have contaminated, the water at Columbia's drinking water intake sites as well as Columbia's wastewater treatment property and facility.  The contamination caused, contributed to, and or maintained by Defendants substantially and unreasonably interferes with Columbia's property rights to appropriate, use, and enjoy water from the Broad River and Lake Murray as well as properly treat Columbia's wastewater using Columbia's wastewater treatment facility.

168.    Defendants' public nuisance has caused substantial damages and will continue to cause damages until Columbia receives compensatory damages for the necessary improvements of filtration technology that will allow for the removal of PFAS from Columbia's drinking water

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

supply as well and wastewater effluent.  Because Columbia's damages are indivisible, Defendants are jointly and severally liable for Columbia's damages.

169.    Damage to Columbia's drinking water facilities as well as Columbia's wastewater treatment facility constitutes special damages.

170.    Defendants committed each of the above-described acts and omissions willfully and with malice, fraud, wantonness, oppression, or lack of the entire want of care which would raise the presumption of conscious indifference to consequences in order to promote sales of their products and or services. Columbia therefore demands an award of punitive damages because of the aggravating circumstances alleged herein in order to penalize, punish, and deter Defendants' conduct.

171.    Columbia is informed and believes that it is entitled to a judgment against Defendants for compensatory damages as well as punitive damages, the costs and legal fees associated with this action.

## FOR A FOURTH CAUSE OF ACTION
### TRESPASS

172.    Columbia incorporates all prior paragraphs by reference as if fully set forth and restated herein.

173.    Columbia owns and occupies property used to serve its water customers, including two water intake sites, a water distribution system, two water treatment plants, one wastewater treatment plant, as well as offices, associated facilities, and equipment.

174.    Columbia owns land and water rights which permit them to draw water from the Broad River and Lake Murray to provide drinking water to its customers. Columbia has a possessory interest in the water it withdraws from the Broad River and Lake Murray in order to treat and sell to its customers.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

175.     Defendants' intentional and voluntary acts in manufacturing, supplying, using, and or discharging PFAS and or products and waste containing or degrading into PFAS, with full knowledge that these toxins would contaminate Columbia's drinking water supply, caused an invasion and damage to Columbia's property, as well as Columbia's possessory interest in its property by Defendants' chemicals, which has affected and is affecting Columbia's interest in the exclusive possession of its property.

176.     Defendants' PFAS chemicals have trespassed into Columbia's drinking water treatment facilities and wastewater treatment facility.

177.     Columbia has at no time consented to the contamination of its water supply or the invasion of its property and possessory interests by Defendants' PFAS chemicals.

178.     Defendants knew or should have known that its manufacture, use, purchase, sale, supply, disposal, discharge, and or release of PFAS and PFAS-containing products or waste could contaminate Columbia's water supply and result in an invasion of Columbia's possessory interest in its property.

179.     Defendants acted in a wanton fashion with reckless disregard for Columbia's water, wastewater, rights, and property interests.

180.     Defendants' trespass is continuous and ongoing. The contamination resulting from Defendants' trespass has migrated and spread and will continue to migrate and spread.

181.     Defendants' continuing trespass has impaired Columbia's use of its property and has caused and will cause Columbia to suffer substantial damages.  Because Columbia's damages are indivisible, Defendants are jointly and severally liable for Columbia's damages.

182.     Defendants knew or should have known the damages caused to Columbia created by Defendants' conduct, practices, actions, and inactions.

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392

183.    Defendants' conduct, practices, and inactions evidence its reckless disregard for Columbia's property.

184.    Columbia is entitled to compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Columbia respectfully requests this Court grant the following relief:

a)      A finding that Defendants are jointly and severally liable to Columbia;

b)      Award Columbia damages in an amount to be determined by a jury sufficient to compensate Columbia for past and future damage, out-of-pocket expenses;

c)      Award punitive damages;

d)      Award prejudgment interests for any costs or damages incurred by Columbia;

e)      Award attorney fees and costs and expenses incurred in connection with the litigation of this matter; and

f)      Award such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted this 4th day of June, 2024.

> *s/Amy L.B. Hill*
> Amy L.B. Hill, SC Bar No.: 68541
> William C. Lewis, SC Bar No.: 101287
> Richardson Thomas, LLC
> 1513 Hampton Street
> Columbia, South Carolina 29201
> T: 803-281-8150
> F: 803-632-8263
> amy@richardsonthomas.com
> will@richardsonthomas.com
>
> and
>
> Jeffrey E. Friedman
> *(pro hac vice admission pending)*

Jeffrey E. (Jay) Friedman, Jr.
*(pro hac vice admission pending)*
Friedman, Dazzio & Zulanas, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
T: 205-278-7057
F: 205-278-7001
jfriedman@friedman-lawyers.com
jayfriedman@friedman-lawyers.com

***Attorneys for Plaintiff***

ELECTRONICALLY FILED - 2024 Jun 04 12:52 PM - RICHLAND - COMMON PLEAS - CASE#2024CP4003392